DREW, J.
 

 h Kenneth R. Dillard was convicted of first degree robbery, La. R.S. 14:64.1,
 
 [1]
 
 ad
 
 *58
 
 judicated a second felony offender under La. R.S. 15:529.1, and sentenced to 60 years in prison at hard labor without benefits. He appeals his conviction and his sentence. We affirm in all respects.
 

 FACTS
 

 On February 14, 2008, Dillard went to the Family Dollar Store on Centenary Boulevard in Shreveport. Wearing a faded red flannel shirt, a light-colored windbreaker, black stocking cap, and white pants, he asked the manager, Bonnie Bounds, where a particular brand of shaving cream was located. He then picked up a can and went to the register. Angie Osborne, a customer in the store, knew him and even called him by name, wishing him a Happy Valentine’s Day.
 
 [2]
 
 When Dillard reached the cash register, he had one hand in the pocket of his windbreaker. Indicating that he had a weapon, he told Bounds to give him the money from the safe or he would shoot her. Bounds could not open the nearby safe. Dillard demanded that she ring up the shaving cream so that the register drawer would open. She did so. He grabbed a bunch of cash in denominations of tens, fives and ones, then fled the store on a pink bicycle.
 

 |2On his way out of the store, he bumped into Aaronetta Moore.
 
 [3]
 
 The cashier called to Moore that she had been robbed by that man, and Moore bravely got into her car and followed the defendant. Moore called the police to report what she was doing, providing her location as well as a description of defendant. She also reported that the suspect had fallen off his bicycle and left it in a ditch on the corner of East Merrick Street and Cornwell Avenue.
 

 Moore lost sight of the defendant momentarily, but saw him again after she circled the block. Dillard had removed his windbreaker and cap, but Moore observed his plaid shirt and white pants. She flagged down Shreveport Police Department Corporal Joseph A. Dews and told him that the defendant had entered Mr. Jim’s Chicken (“Mr. Jim’s”) on Youree Drive and was attempting to blend in with the crowd. When Dews arrived at Mr. Jim’s, he saw that Corporal Steve Hawthorne had already responded to the radio report, gone to the restaurant, identified the suspect, and taken him into custody. Hawthorne found on Dillard’s person a wad of money in small denominations.
 

 Detective Jack Miller and Corporal Tim
 
 Adgate
 

 [4]
 

 of the Shreveport Police Department conducted an immediate show-up
 
 [5]
 
 with two witnesses,
 
 [6]
 
 each of whom identi
 
 *59
 
 fied Dillard as the robber. Bounds also identified him.
 

 | ^.Shreveport Police Department Corporal Michael Greaver met with several witnesses. One was George Lindle, who told him that he saw the suspect run out of the store. Greaver took Lindle to Mr. Jim’s to view the suspect. The witness was nervous, saying, “That’s the man but that’s not the clothes he was wearing. He had a green jacket on.”
 

 After he got back to the store, Greaver heard that Officer David Emberton had located the suspect’s bike at the corner of East Merrick and Cornwell, and needed an officer to handle it. Greaver responded, photographed the bike, and watched it until detectives decided what they wanted to do with it. He later released the bicycle to Angela Goldsmith, who told him that she and Dillard lived together, and that he had left their house on the bicycle that morning.
 

 Emberton found a black nylon skullcap behind a house on East Olive Street. Greaver took photos of the skullcap and seized it. While Emberton was still looking for the rest of the clothing, Greaver spoke to Leonard Flemón, who was raking leaves on the northwest corner of East Merrick and Cornwell. Greaver testified that Flemón said he saw a man removing his coat as he ran behind a house.
 

 Emberton walked around the house and found, hidden behind the cinder blocks of the house, a white, green, and black windbreaker with a black knit cap wadded up inside the coat. Greaver photographed the clothing, then seized it.
 

 On March 4, 2008, Dillard was charged by bill of information with violating La. R.S. 14:64.1, first degree robbery. He was appointed an |4attorney, who filed a motion for discovery and a supplemental discovery request in this matter, and the state filed answers. The case was first set for trial on February 2, 2009. On February 4, 2009, a jury was seated and testimony had begun when the state filed a supplement to its prior discovery responses and a notice under La. C. Cr. P. art. 768. The discovery response included reports from Dews and Hawthorne. Dews’ report included information that Demetrious Baker had seen a man who abandoned the pink bicycle. Baker was taken to Mr. Jim’s to identify the suspect, but was not sure that Dillard was the person he had seen on the bicycle. Because the prosecution had failed to provide the defense attorney with Dews’ report, which might have contained
 
 Brady
 

 [7]
 

 material, the state joined the defense in filing a motion for a mistrial, and the mistrial was granted.
 

 The matter was reset for trial for April 29, 2009. A jury was seated and four witnesses had appeared when the state attempted to put Officer Greber (apparently referring to Greaver) on the stand. Greaver’s report had not been provided to the defense attorney in discovery. The report contained the names of three people with whom the officer had been in contact: George Lindle, Leonard Flemón, and Angela Goldsmith. The defense attorney objected and asked the court for time to investigate these witnesses because he had not seen the Greaver report. The judge called a recess to allow the defense attorney time to locate the three witnesses, but he was unable to do so in the time allotted. The defense moved for another [ .¡mistrial. The trial court declared a second mistrial and reset the matter for May 18, 2009.
 

 The defendant filed motions to quash the bill of information on the basis that
 
 *60
 
 double jeopardy had attached, and that the proceedings had been tainted because the state had provided every witness a complete copy of every police report and witness statement. A hearing was held prior to the trial on May 18, 2009. The motions were denied. The trial court found that failure of the state to provide the defendant with discovery that might contain
 
 Brady
 
 material was not caused by bad faith or intentional prosecutorial misconduct. Further, the trial court found that the state’s purpose in providing all the witnesses with a copy of the entire file was to assure that after two attempts at trying the defendant and having mistrials declared, the state had given true and accurate information to Dillard’s attorney and that no exculpatory evidence was being omitted from the information to be turned over to the defense. For those reasons, the motions to quash were denied.
 

 The jury was selected for the third trial, and testimony began on May 19, 2009. At trial, five police officers and Bounds testified. According to the defendant, the state was allowed to elicit hearsay testimony regarding issues of identification of the suspect. One subpoenaed witness, Yvonne Staton, failed to appear. The jury returned a verdict of guilty as charged on May 20, 2009.
 

 On May 21, 2009, a contempt hearing was held and Staton was allowed an opportunity to explain why she had failed to appear. The trial | ficourt was satisfied that there had been miscommunication between Staton and the District Attorney’s office. She claimed that she was the victim of the robbery. The judge asked, “Ma’am, you say you were the one that was held up?” and she answered, “Yes, me and Bonnie. She was the manager and I was the assistant manager and he had the gun pointed on me or whatever he had in his pocket, I didn’t see it but he had something pointed at me.”
 

 The defendant filed a motion for new trial or alternatively a motion for post-verdict judgment of acquittal on the grounds that Staton, not Bounds, was the victim, and that the state had been allowed to introduce testimony of identification by Angie Osborne without her ever testifying.
 

 The state filed a multiple offender bill charging Dillard as a second felony offender. A hearing was held on September 24, 2009, which addressed first the motions for new trial or post-verdict judgment of acquittal. Those motions were denied. Next, the trial court took up the matter of the second felony offender bill. Dillard was adjudicated a second felony offender because he had been convicted of three counts of armed robbery in 1989 and had been concurrently sentenced to 15 years at hard labor on each count. Dillard had been released from prison in early 2004 and released from parole in September of 2006.
 

 A sentencing hearing was held on October 27, 2009. Dillard was sentenced to 60 years at hard labor without benefit of probation, parole, or suspension of sentence.
 
 [8]
 
 A motion to reconsider sentence was filed and |7denied. Dillard filed this appeal seeking review of his conviction and sentence.
 

 DISCUSSION
 

 I. SUFFICIENCY OF THE EVIDENCE
 

 The defense claims that the state failed to meet its burden of proof under
 
 *61
 

 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires that the conviction must be based on proof sufficient for any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime proven beyond a reasonable doubt.
 

 The first element the defense claims was not sufficiently proven was the identification of Dillard as the perpetrator of the crime.
 

 The defense argues only one witness testified as to what actually happened at the Family Dollar Store, and only one witness had a firsthand opinion that Dillard was indeed the robber; that witness was Bounds, the manager of the store who also claimed to be the victim in the robbery.
 

 Dillard argues that Bounds only identified him as the perpetrator when an unknown police officer drove him back to the store. Bounds’ identification in court was positive, though couched in terms of “changes” in Dillard’s looks. Dillard questions the reliability of this identification.
 

 Dillard further argues that all other witnesses who took the stand were unable to identify him as the robber or as the person who left the bicycle on the ground at Corn-well Avenue and East Merrick Street.
 

 1 sDillard also complains that all other identifications of him were made through hearsay. Corporal Adgate testified that he took Yvonne Staton, an employee of the Family Dollar Store, and Angie Osborne, the person who claimed to know the defendant already, to Mr. Jim’s to make an identification of the suspect, and both positively identified Dillard as the perpetrator. Since neither Staton nor Osborne testified, Dillard was unable to confront the witnesses against him.
 

 Dillard also argues that the state failed to meet its burden of proof because there was no evidence presented at trial that the amount of money he had with him when arrested was the same amount taken from the store. Further, the defense argues that no fingerprint evidence was introduced and no videotape was produced, even though such evidence was supposedly available for production.
 

 The state argues in opposition that:
 

 1. Dillard only disputed his identification by the other witnesses;
 

 2. Dillard had changed his appearance
 
 [9]
 
 between arrest and trial;
 

 3. Nevertheless, Bounds clearly identified him as the person who robbed her;
 

 4. Several officers who identified Dillard as the person they had arrested at Mr. Jim’s Chicken also noted changes in his appearance;
 

 5. Witnesses Staton and Osborne also identified him as the robber; and
 

 6. Even if these identifications are excluded as hearsay, the testimony of one witness, if believed by the jury, is sufficient to support a finding of guilt.
 

 | flOur law on reviewing the evidence for sufficiency is well settled.
 
 [10]
 

 
 *62
 
 The evidence presented by the prosecution in this case is easily sufficient to support the jury’s finding. Bounds’ testimony proved every element needed for a finding of guilty as charged.
 

 II. HEARSAY
 

 Statements by Aaronetta Moore
 

 Prior to trial, defense counsel filed motions in limine seeking to prohibit the introduction of hearsay evidence by Miller and Dews regarding |inthe statements made to them by the now-deceased witness Aaronetta Moore, as she followed the suspect right after the robbery. On September 24, 2009, the trial court held the hearing on the motion for new trial and motion for post-verdict judgment of acquittal. At the hearing, the issue of the prior motions in limine was brought up, with the trial court sagely stating:
 

 We had a situation where an eyewitness passed away before the trial took place. There was a motion in limine concerning the testimony of that deceased witness. The Court granted the motion in limine in part and denied it in part. The Court, with regard to any information that deceased witness gave the police officers as she, as the chase was ensuing, the Court allowed the testimony concerning that information because it was present sense impression and perhaps an excited utterance; however, the information that deceased witness gave to police officers a day or two after the incident took place was prohibited from being admitted at trial since it did not come within the present sense impression or the excited utterance exception.
 

 We agree.
 

 La. C.E. art. 803 contains the hearsay exceptions when the availability of the de-
 
 *63
 
 clarant is immaterial. It states in pertinent part as follows:
 

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 

 (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
 

 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 

 In
 
 State v. Heggar,
 
 39,915 (La.App.2d Cir.8/17/05), 908 So.2d 1245, a motion in limine had been filed in the lower court to exclude hearsay about a phone call made by a homicide victim to his girlfriend just | nmoments before he was murdered and in which he told her that his murderer was driving up the driveway. The trial court had admitted the testimony under the present sense impression exception to the hearsay rule. The defendant argued that this testimony denied his right to confront the witnesses against him. This court found no constitutional or statutory impediment to the use of the testimony.
 

 In this case, the statements by Aaronet-ta Moore, who was deceased at the time of the trial, qualified under the present sense impression exception to the hearsay rule. The only statements allowed to be introduced concerned what she said to Dews when she flagged him down and described the man she had followed from the Family Dollar Store and his location. Such information described a condition, the perpetrator’s location and description, and was made while Moore perceived the event or condition, or immediately thereafter, and lawfully conformed to the present sense impression exception to the hearsay rule.
 

 Identifications of Dillard by Staton and Osborne
 

 Dillard attacks his identification through the testimony of certain officers, rather than by the testimony of the actual persons who made the identifications. He asserts these hearsay identifications violated his right to confrontation of witnesses.
 

 Yvonne Staton was the store cashier who failed to appear at trial due to a miscommunication with the District Attorney’s office. Angie Osborne actually knew Dillard and allegedly called him by name at the store. Neither Staton nor Osborne testified.
 

 1 i2The defense argues Dews was allowed to testify that Adgate had brought two witnesses to Mr. Jim’s to identify Dillard, but that he did not even know the witnesses’ names. Dillard also complains that other officers (including Hawthorne and Miller) were allowed to refer to the identification of him by these two witnesses at other parts of the trial.
 

 Adgate testified that he was the person who took the two women to Mr. Jim’s and that they positively identified the suspect in custody as the person who had robbed the Family Dollar Store. Further, Bounds testified that a customer in the store had greeted Dillard by name.
 

 In response to this argument, the state claimed the defense did not make a contemporaneous objection regarding the officers’ testimony as to the identifications made by Staton and Osborne. The defense’s objections as to hearsay were limited to Miller’s reference to statements by Bounds, to Adgate’s efforts to recall “exactly” what Osborne had said, and to a question regarding what Flemón told Greaver. There were no contemporaneous objections, as required by La. C. Cr. P. art. 841.
 

 
 *64
 
 In
 
 State v. Haynes,
 
 09-109 (La.App. 5th Cir.2/9/10), 34 So.3d 325, the court held the defendant waived for appellate review a claim that the officer’s trial testimony regarding what an informant told him about an arranged drug deal was impermissible hearsay when the defendant failed to make a timely objection at trial. The court found that while a law enforcement officer may not testify as to the contents of an informant’s tip because such testimony violates the accused’s right to confront and cross-examine witnesses, under certain circumstances, the testimony of a police 11sofficer may include information provided by a third party without constituting hearsay, if it is offered to explain the police investigation and the steps leading to the defendant’s arrest.
 

 Even if hearsay evidence is erroneously admitted at trial, confrontation errors are subject to a harmless error analysis.
 
 Id.
 
 An error is harmless when the guilty verdict was surely unattributable to the error.
 
 State v. Robertson,
 
 2006-1537 (La.1/16/08), 988 So.2d 166. Factors to be considered include the importance of the evidence to the state’s case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the state’s case.
 
 Haynes, supra.
 

 In this case, Dillard waived the right to object to the introduction of the identifications of him by Yvonne Staton and Angie Osborne. The officers testified that the women identified the suspect in custody as the person who had robbed the Family Dollar Store, and were only repeating the steps that had been taken during the investigation and were not asserting the truth of the matter.
 

 Confrontation errors are subject to a harmless error analysis. Here, the state identified the suspect through the testimony of the victim, Bounds. Therefore, the police officers’ testimony that Dillard had also been identified by Yvonne Staton and Angie Osborne was cumulative, and provided only corroborating identification. Dillard was given the opportunity to cross-examine all the witnesses. Given the fact that Dillard escaped on a pink bicycle and was closely tailed by someone who left the | ^parking lot at the same time that he did, the state’s case was strong. Even if Dillard’s counsel had made a contemporaneous objection to the mention of the women who positively identified the robber, the introduction of the evidence was at most harmless error.
 

 III. DENIAL OF MOTION FOR NEW TRIAL/POST-JUDGMENT VERDICT OF ACQUITTAL
 

 Dillard argues that Yvonne Sta-ton’s testimony, given at her contempt hearing the day after trial was concluded, should entitle him to a new trial. Staton claimed at the hearing that she had also been the victim of the robbery. At trial, Bounds had made no mention of Staton being robbed, and testified only that the defendant took money from her register. Dillard claims that this testimony, if provided at the trial, would somehow have had a significant impact on the verdict, and it is, at any rate, new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during trial.
 

 The state’s opposition to this motion points out that at the contempt hearing, after Staton claimed to have been the victim of the robbery, the trial court asked, “Ma’am, you say you were the one that was held up?” Staton answered, “Yes, me and Bonnie. She was the manager and I was the assistant manager and he had the gun pointed on me or whatever he had in
 
 *65
 
 his pocket, I didn’t see it but he had something pointed at me.”
 

 This “evidence” did not warrant a new trial. The fact that both employees could consider themselves as victims is quite reasonable. In any event, it is difficult to assess how this could be significantly helpful to the defendant.
 

 11fiThe grounds for a new trial are listed in La. C. Cr. P. art. 851. The denial of a motion for new trial is not subject to appellate review except as to errors of law. La. C. Cr. P. art. 858. A trial court’s ruling on a new trial motion will not be disturbed on appeal absent a clear showing of an abuse of discretion.
 
 State v. Macon,
 
 2006-481 (La.6/1/07), 957 So.2d 1280. There is no abuse of discretion here. We find that the trial court properly denied this motion. We note that Staton’s name was on the witness list, and but for the misunderstanding with the District Attorney’s office, she would have appeared as a witness at the trial.
 

 IV. DOUBLE JEOPARDY/DISCLOSURE OF THE STATE’S FILE TO ALL WITNESSES
 

 Dillard argues that he filed two motions to quash his indictment. Both were denied by the trial court. The first motion claimed double jeopardy in that two juries had been seated prior to the third trial of the matter, and he had been granted two mistrials after the seating of those juries. The second motion to quash claimed that his constitutional right to a fair and impartial trial was violated because the state provided every witness with a complete copy of every police report, every witness statement, the criminal history of the defendant, case dispositions regarding the defendant, photos of the crime scene, and witness lists.
 

 Double Jeopardy
 

 In support of the motion which raises the double jeopardy issue, Dillard cites U.S. Const. Art. V, which provides that no person shall be twice put in jeopardy of life or limb for the same offense. Dillard also cites La. Const. Art. I, § 15, which provides that no person shall be twice placed 11ñin jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained. La. C. Cr. P. art. 592 concerns when jeopardy begins and states that when the defendant pleads not guilty and is tried by a jury, jeopardy begins when the jury panel is sworn pursuant to La. C. Cr. P. art. 790.
 

 Dillard claims he was forced to move for a mistrial twice after the jury had been seated due to the actions of the prosecution in withholding exculpatory and impeachment evidence after being ordered to turn over the evidence to defense counsel. Dillard also argues the prosecutorial actions were motived by bad faith, and thus, retrial was not permissible because to hold another trial would violate double jeopardy-
 

 In support of his argument that double jeopardy should attach, Dillard cited
 
 State v. Paddio,
 
 2002-722 (La.App. 3d Cir.12/11/02), 832 So.2d 1120,
 
 writ denied,
 
 in which the court stated that to bar a second prosecution after mistrial, under the doctrine of double jeopardy, a prosecutor’s conduct must be overreaching and considered bad faith harassment which seriously prejudices the defendant, causing him to reasonably conclude that a continuation of the tainted proceeding would result in a conviction.
 

 Dillard argues that his case is most similar to
 
 State v. Elzey,
 
 2005-0562 (La.App. 4th Cir.1/11/06), 923 So.2d 182,
 
 writ denied,
 
 in which it was found that the state
 
 *66
 
 had intentionally violated a ruling prohibiting any further testimony concerning prior bad acts, thus provoking the defendant into moving for a mistrial, and retrial would have violated the double jeopardy clause.
 

 [ 17The state argued that double jeopardy does not attach when a defendant moves to set aside his conviction. In cases regarding a retrial, intentional acts and bad faith are required for double jeopardy to attach even when the defendant moves for a mistrial. In support of this argument, the state cites
 
 Oregon v. Kennedy,
 
 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), and
 
 State v. Koelemay,
 
 497 So.2d 321 (La.App. 2d Cir.1986),
 
 writ denied.
 

 The state points out that the trial court denied the motion to quash based on double jeopardy because it found that Dillard’s counsel had specifically stated his belief that the failure to disclose possible
 
 Brady
 
 material was not the result of any bad faith or intentional act by the prosecutor, even though two mistrials were called because of the state’s failure to turn over all pertinent evidence. Therefore, the state argues the trial court found no basis for Dillard’s assertions of prosecutorial bad faith, and the motion to quash was properly denied.
 

 Our law on reviewing mistrial requests is well settled.
 
 [11]
 

 |iRIn this case, the trial court found that the first two mistrials had to be called because the prosecutor inadvertently left police reports out of the discovery provided to the defense attorney. In the first trial, the defense attorney specifically stated that he did not believe the prosecutor was intentionally withholding evidence. In fact, the case was originally being tried by a different prosecutor, and then it was turned over to the prosecutor who actually took the case to trial. The state joined in the defense attorney’s motion for a mistrial in the first case because the material may have contained
 
 Brady
 
 evidence.
 

 The second time the case was declared a mistrial, another police report was discovered unfurnished during trial. Defense counsel was not aware he was missing the report until after the jury was seated and four witnesses had been called. The officer testified that he had interviewed three
 
 *67
 
 witnesses, and according to the report, two of the witnesses were unable to identify Dillard as the person they had seen. The trial court gave defense counsel time to have his investigators locate these witnesses, to no avail.
 

 Dillard moved for both mistrials. Because the actions of the state in failing to provide the defense attorney with the reports was simply negligence, not intentional, and because Dillard was not prejudiced by the mistrials, we do not find that the double jeopardy rule was violated by the third trial taking place.
 

 1Propriety of the State’s Allowing File Access to All Witnesses
 

 The state gave every witness access to the entire file in this case. Dillard claims this violated his right to a fair and impartial trial and is contrary to the Sixth Amendment of the U.S. Constitution and La. Const. Art. I, § 16, urging that each witness is supposed to testify only from his own personal knowledge. He argues that provision of all this other material denied his right to due process and a fair trial.
 

 The state argues that it provided the witnesses with the documents only because, after two mistrials, it wanted to be absolutely certain that no other evidence was inaccurate or missing from the information it intended to provide to opposing counsel. The state points out that other than claiming that the state’s witnesses were “tainted” by having seen these files, Dillard did not ask the court for any relief with regard to the tainted witnesses. Therefore, the state argues, Dillard cannot now raise a new basis for objection on appeal.
 

 The state points out that La. C. Cr. P. art. 841 provides that to preserve an objection, it is sufficient that a party, at the time of the ruling or order of the court is made or sought, makes known to the court the action he desires the court to take. Because Dillard did not object to the testimony of the officers or Bounds specifically on the basis that they had seen all the police reports prior to trial, the state claims Dillard waived his right to raise the issue now.
 

 l2nAt the hearing on the motions to quash, the trial court inquired as to why the prosecutor provided the files to the witnesses. This response was made:
 

 Your honor, the purpose was to ensure that there was no additional discoverable material that was not listed in the police report. As far as witness statements, there may have been something in the police report that a witness said that was not in the police report. This is to ensure that there is no additional
 
 Brady
 
 material due to the history of this case, Your Honor. The State is just making sure that every stone is not left unturned. We’re trying to make sure that all evidence will be turned over before trial. That’s the reason why we sent police reports to every witness, Your Honor.
 

 The trial judge asked if the reports were sent to all witnesses or just law enforcement, and the prosecutor responded, “All witnesses.” The judge asked what the purpose was of sending them to lay witnesses, and the prosecutor responded, “[T]o make sure that the statements made by lay witnesses in police reports were accurate. And also to make sure that the witnesses did not make any statements that were not listed in the police report.” Thereafter, the court found that it was not inappropriate, considering the history of the case, for the state to forward a copy of the file to the state’s witnesses in an attempt to find any other
 
 Brady
 
 material. The trial court found the state was proceeding with due diligence in attempting to
 
 *68
 
 find any other evidence which it did not have in writing. ■
 

 Our law on motions to quash is well settled.
 
 [12]
 

 121Pillard filed his motion to quash and argued that the state had tainted the testimony of potential witnesses by providing each witness with the entire file on the case, thereby revealing evidence which other witnesses would be relating to the trier of fact. However, as the state argued, the defendant’s attorney failed to specify the relief he sought as a result of this procedural
 
 faux pas
 
 by the state in its effort to provide him with all potential
 
 Brady
 
 material.
 

 While there were certainly other ways the state could have handled this problem that would have protected one witness from knowing what the other intended to say in his testimony, at least in this case, the sharing of this evidence did not result in fundamentally flawed or tainted testimony being given at trial. The only lay witness presented at trial was Bounds, and she identified Dillard as the person who robbed her on the date the incident occurred. Therefore, any file Bounds received later revealing what other witnesses, all of whom were law enforcement, may testify to regarding the incident, would have had no effect on her testimony. She was the victim, she knew what happened to her, she identified the suspect on the day of the incident, and she recognized him in the courtroom. Therefore, any problem created by sharing this file with other witnesses did not cause Dillard to lose his right to a fair and impartial trial. Certainly, all witnesses were subject to cross-examination. Under these facts, there is no error on this issue.
 

 | mV. EXCESSIVENESS
 

 Dillard argues that the imposition of a sentence of 60 years at hard labor is unconstitutionally excessive and nothing more than a needless infliction of pain and suffering. At the hearing on the second felony habitual offender offense, the state introduced evidence of Dillard’s first felony conviction, including court minutes indicating that he had pled guilty to three counts of armed robbery on May 17, 1989, and was sentenced to 15 years at hard labor on May 19, 1989. Phillip Adkins, probation and parole supervisor for the Louisiana Department of Corrections, testified that he supervised Dillard as a parolee.
 

 Dillard contends the trial court incorrectly stated the number of counts of armed robbery convictions, and misstated the time period during which Dillard was out of prison. Because the trial court repeatedly made these mistakes at the sentencing hearing, Dillard argues that the trial court failed to tailor the punishment to him. Further, Dillard argues that the sentence is grossly disproportionate to the
 
 *69
 
 severity of the crime, considering the harm done to society.
 

 The trial court was indeed mistaken in reiterating the number of counts of armed robbery; however, no one at sentencing sought to correct the trial court’s misunderstanding on this issue. The state notes this was raised not in Dillard’s motion to reconsider sentence but only for the first time on appeal.
 

 | ^Without a contemporaneous objection, Dillard now has only constitutional grounds upon which to complain about his sentence. Our law on the review of a sentence for excessiveness is well settled.
 
 [13]
 

 The jury found Dillard guilty of first degree robbery, which carries a possible sentence of three to 40 years at hard labor, all without benefits.
 

 In due course, Dillard was adjudicated a second felony offender under La. R.S. 15:529.1. That statute provides that if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. Under 124these facts, the range of sentence was 20 to 80 years at hard labor, all without benefits.
 

 At the sentencing hearing, the trial court noted that in 1989, Dillard was sentenced to 15 years at hard labor, and that he exited prison in 2006.
 
 [14]
 
 The trial court noted that at the time Dillard entered his guilty plea in the previous case, the plea was entered and considered as one plea
 
 *70
 
 and one conviction, although there were multiple offenses charged. The trial court noted that since that time, the law had changed, and it considered that Dillard had already received a substantial benefit under the law as it existed at the time of the guilty plea.
 

 The trial court considered the factors presented under La. C. Cr. P. art. 894.1 in an effort to arrive at an appropriate sentence, mentioning that it had seriously’considered each and every category before arriving at the sentence it intended to impose. The court found an undue risk that during the period of a suspended sentence or probation, Dillard would commit another crime based on his criminal history. The court further found that:
 

 • the defendant was in need of correctional treatment;
 

 • any lesser sentence would deprecate the seriousness of this crime; and
 

 • the fact that the defendant committed this crime after he had previously pled guilty to armed robbery indicated that he did not learn his lesson.
 

 The trial court noted that Dillard grabbed money by threat of death or great bodily harm. The trial court did not consider as a mitigating factor the fact that a gun was never found. In fact, because Dillard had been found |2sguilty of first degree robbery, he had made the victim think she was at risk of death. It also found Dillard used threats of actual violence in committing the crime.
 

 The trial court considered mitigating circumstances under La. C. Cr. P. art. 894.1, and found that none of them applied. Thereupon, the trial court sentenced Dillard to 60 years in prison at hard labor, without benefits. At no point did counsel make clear to the court the correct number of robbery counts, nor the date of release from prison. Any objection to these errors are waived.
 

 The trial court clearly justified this sentence, which is within the constitutional range of 20 to 80 years mandated by statute for second felony offense adjudications. We detect no abuse of discretion in the sentence.
 

 CONCLUSION
 

 The evidence presented at trial was sufficient for a reasonable jury to conclude that Dillard committed this crime. The motions to quash were properly denied. The admission of hearsay was harmless error, at worst. A new trial or post-judgment verdict of acquittal was not warranted simply because another person felt herself to also be a victim of the robbery. The sentence is appropriate and lawful.
 

 DECREE
 

 The conviction and sentence are AFFIRMED.
 

 [1]
 

 . La. R.S. 14:64.1 states as follows:
 

 A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
 

 B. Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation, or suspension of imposition or execution of sentence.
 

 [2]
 

 . This raises the question: Considering what happened next, how was he actually planning to get away with this crime?
 

 [3]
 

 . At the time of the trial, Moore was deceased.
 

 [4]
 

 . In the record, this officer's name is sometimes spelled “Aggate.”
 

 [5]
 

 . A "show-up” is a one-on-one viewing of a suspect by a witness right after a crime.
 

 [6]
 

 . One of these witnesses was Yvonne Staton, an employee of the Family Dollar Store. The other witness was Angie Osborne, the person who knew defendant personally and greeted him in the store immediately before the robbery. Neither testified at trial.
 

 [7]
 

 . Evidence in the state’s custody which is favorable to the accused must be shared with the defendant.
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 

 [8]
 

 . Although at the sentencing hearing the trial court noted the defendant had pled guilty to seven counts of armed robbery, in fact, the defendant had pled guilty to three counts of armed robbery and four other counts against him had been dismissed.
 

 [9]
 

 . He had changed his hair, shaved, wore glasses, and gained weight. Even George Lindle noted that the defendant appeared “heavier” than when he saw him at Mr. Jim’s.
 

 [10]
 

 . When a defendant alleges both insufficiency of evidence and one or more other trial errors, the appellate court should first determine the sufficiency challenge.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Warren,
 
 28,889 (La.App.2d Cir. 12/11/96), 712 So.2d 500.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of
 
 *62
 
 fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The
 
 Jackson
 
 standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833,
 
 writ denied.
 
 The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied; State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La. 1/26/00), 775 So.2d 1022,
 
 cert. denied.
 
 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. When the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Calloway,
 
 2007-2306 (La. 1/21/09), 1 So.3d 417. Ultimately, all evidence, both direct and circumstantial, must be sufficient under
 
 Jackson
 
 to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Rosiere,
 
 488 So.2d 965 (La.1986).
 

 [11]
 

 . In
 
 Oregon v. Kennedy,
 
 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the court held that a mistrial does not normally bar a second prosecution unless the conduct of the prosecutor, which caused the mistrial, was intended to provoke the defendant into moving for a mistrial. The prosecutor’s conduct must be overreaching and considered bad faith harassment which seriously prejudices the defendant, and causes him to conclude that a continuation of the tainted proceeding would result in a conviction.
 
 U.S. v. Dinitz,
 
 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).
 

 In
 
 State v. Paddio,
 
 2002-722 (La.App. 3d Cir.12/11/02), 832 So.2d 1120,
 
 writ denied,
 
 the court stated that mere negligence by a prosecutor is not sufficient to bar a second prosecution on the same charges.
 
 State v. Amato,
 
 96-0606 (La.App. 1st Cir.6/30/97), 698 So.2d 972,
 
 writs denied.
 
 When such conduct does not indicate bad faith on the part of the prosecutor, retrial is permissible.
 
 State v. Cannon,
 
 383 So.2d 389 (La.1980), ce
 
 rt. denied.
 

 In
 
 Paddio, supra,
 
 the defendant’s first case ended in a mistrial because an inexperienced criminal prosecutor called the defendant as his first witness. He had informed defense counsel that he planned to do this, but the defense counsel thought he was joking. When the mistrial was ordered, the prosecutor apologized to everyone in the court for the error, offered to be publicly reprimanded by the court in lieu of a mistrial, and vigorously argued that the trial should continue. The trial court in the second trial accepted the representation of the prosecutor that his actions in the first trial were unintentional and not intended to provoke a mistrial in the case. The trial court also found that the defendant had suffered no prejudice as a result of the mistrial. The appellate court agreed and found no double jeopardy.
 

 [12]
 

 . La. C. Cr. P. art. 531 concerns the motion to quash and the nature of the motion. It states as follows:
 

 All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of "not guilty” and of "not guilty and not guilty by reason of insanity,” shall be urged by a motion to quash.
 

 A motion to quash is essentially a mechanism by which pretrial pleas are urged, that is, pleas that do not go to the merits of the charge. In a hearing on such a motion, evidence is limited to procedural matters, and the question of factual guilt or innocence is not before the court.
 
 State v. Byrd,
 
 96-2302 (La.3/13/98), 708 So.2d 401,
 
 cert. denied.
 

 In regard to relief sought when a defendant files a motion to quash, when there are several grounds in a motion to quash a bill of information, the court is not powerless to grant partial relief, even though there is no specific statutory provision for divisibility of a motion to quash.
 
 State v. Mitchell,
 
 319 So.2d 357 (La.1975).
 

 [13]
 

 . The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied.
 
 The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Hampton,
 
 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284,
 
 writs denied.
 
 The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747,
 
 writs denied.
 
 There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App.2d Cir. 12/13/06), 945 So.2d 277,
 
 writ denied.
 

 Second, a sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La. 1/14/03), 839 So.2d 1;
 
 State v. Dor-they,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La. 1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
 

 Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive.
 
 State v. Guzman,
 
 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158;
 
 State
 
 v.
 
 Lingefelt,
 
 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280,
 
 writ denied.
 

 [14]
 

 . This was also in error. Dillard was released in 2004.