STEWART, J.
hAs a result of a plea agreement, the defendant, Marcus Jones, pled guilty to three counts of manslaughter, a violation of La. R.S. 14:81, and aggravated arson, a violation of La. R.S. 14:51. He was subsequently sentenced to 40 years’ imprisonment at hard labor as to each count of manslaughter. He was also sentenced to 20 years’ imprisonment at hard labor for aggravated arson, two years of which are to be served without benefit of probation, parole or suspension of sentence, and fined $5,000 and court costs. The sentences were ordered to be served concurrently and the defendant was given credit for time served. The defendant appeals his sentences, which we affirm for the reasons discussed below.
FACTS
The defendant grew up across the street from the victims in Oak Grove, Louisiana. These two families often engaged in disputes, such as verbal arguments, physical altercations, and acts of vandalism. Oddly enough, the defendant, who was 18 years old at the time of the incident, and one of the victims, Tiffany Davis, who was 19 years old at the time of the incident, dated shortly before the incident.
On October 13, 2008, Tiffany engaged in a verbal argument with one of the defendant’s relatives. This argument attracted a crowd, including the defendant and his codefendants, namely, Hurk McKenzie Harris, Nicholus D. Hullaby, Eldrick Dion Smith, Joe Nathan Smith, and Leroy Mack. This group of young men joined the crowd, and exchanged threats with Tiffany. Specifically, a witness’s statement noted that Hurk said that “he was going to do something big enough to get Channel 8 news there.”
*500 | ¡.Later that night or during the early morning hours of October 14, 2008, the defendant and his codefendants went to the only store open in Oak Grove after midnight, the EZ Mart, and purchased gasoline amounting to two dollars. They allegedly used the defendant’s gas can for the purchase. After making the gas purchase, they returned to the victims’ home and poured gasoline at the rear of a vehicle, a Chevrolet Surburban, parked under the carport, near the only door of the house. One of the defendants then ignited the gasoline with a lit “blunt.”
The fire ignited and quickly spread to the attic over the garage, which burned over into the house. There were seven people asleep in the home. Although four of the victims were able to escape the burning home, the three remaining victims, Tiffany Davis, age 19, Derrick Davis, age 17, and Devon Christmas, age 4, were overcome by smoke and perished in the home.
As the fire burned the home during the early morning hours of October 14, 2008, a crowd gathered. The defendant and his codefendant’s returned to the scene and watched. Several witnesses observed the group of men engage in “bizarre behavior,” such as laughing and commenting, “that’s how we roll.” One of the codefen-dants was also overheard saying, “we didn’t mean that.” This statement was captured by a Channel 8 news crew, who were interviewing people at the scene regarding the tragedy. The news crew notified the police of their discovery.
Initially, the defendant and his codefen-dants were each charged with three counts of first degree murder. These charges were amended to three | ¡¡counts of second degree murder, and ultimately amended to three counts of manslaughter and one count of aggravated arson pursuant to a plea agreement.
As stated above, the defendant was sentenced to 40 years’ imprisonment at hard labor as to each count of manslaughter. For the aggravated arson offense, the defendant was sentenced to 20 years’ imprisonment, with two years of the sentence to be served without benefit of probation, parole, or suspension of sentence, and fined $5,000 and court costs. The sentences were ordered to be served concurrently and the defendant was given credit for time served.
The defendant’s counsel made an oral motion to reconsider sentence, alleging the defendant’s youth and first offender status. It was denied. The defendant subsequently filed a pro se motion to reconsider sentence, alleging that the sentence was excessive due to his age, family history, and his education. He also alleged that he was coerced into committing the crime by others. The defendant requested that his sentences be reduced to a midrange sentence of 20 years’ imprisonment. This motion was denied. The defendant now appeals, urging one assignment of error.
LAW AND DISCUSSION
Excessive Sentence
In the defendant’s sole assignment of error, he alleges that the trial court imposed sentences that are excessive, since they are “nothing more than cruel and unusual punishment and, thus, excessive and in violation of the Eighth Amendment of the Constitution of the United States and La. ^Constitution Art. I, § 20.” More specifically, the defendant argues that the maximum sentences are reserved for the worst offenders. He urges that since the death of an individual is contemplated in the manslaughter statute, a death alone does not justify a maximum sentence. The defendant contends that even though he may have received a benefit as a *501 result of a plea agreement, the court must consider whether it was likely under the facts of the case that he would have been convicted as charged. Additionally, he argues that the trial court did not give full consideration to the fact that he was younger than his codefendants and that he was coerced into committing the crime.
La. R.S. 14:31(B), regarding the crime of manslaughter, states:
B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.
La. R.S. 14:51, regarding the crime of aggravated arson, states in pertinent part:
Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than six nor more than twenty years, and shall be fined not more than twenty-five thousand dollars. Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence.
 A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. McCall, 37,442 (La.App. 2 Cir. 8/20/03), 852 So.2d 1162, writ denied, 04-0039 (La.12/17/04), 888 So.2d 858. On review, the | ^appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App. 2d Cir. 11/3/10), 55 So.3d 56.
The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a|fipurposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 *502 So.2d 864. A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,-638 (La.App. 2d Cir. 11/3/10), 55 So.3d 90.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Young, 46,575 (La.App. 2 Cir.9/21/11), 73 So.3d 473; State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665. In cases where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in his potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667; State v. Richardson, 446 So.2d 820 (La.App. 2d Cir.1984). This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Black, supra. Further, a substantial advantage obtained by means of a plea bargain, such as a reduction of the charge where the evidence shows the 17offender is guilty of the most serious offense originally charged, is a legitimate consideration in sentencing. State v. Burgess, 42,310 (La.App. 2 Cir. 9/12/07), 965 So.2d 621.
After a careful review of the record, we do not find constitutional error in the imposition of the maximum allowable sentence, given the defendant’s actions. The record indicates that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. Specifically, the trial court noted its review of the PSI and stated its reasons for sentencing the defendant, including the fact that he would not be a good candidate for a probated or suspended sentence. It based this conclusion on the fact that “anyone who participates in burning a house where [sic] sleeping children and adults inside is capable of committing another serious offense.” The trial court explained that the defendant’s violent behavior that resulted in the loss of life and property requires a prison sentence rather than probation, since a lesser sentence would deprecate the seriousness of the defendant’s crime.
The trial court recognized that the defendant’s age at the time of the commission of the crime was 18 years old. It noted that the defendant had no prior criminal history, and considered it a mitigating factor. The trial court also considered the fact that the defendant would lose the affection, companionship, and support of his family if a long sentence was imposed.
The trial court recognized that the victims suffered cruel and inhumane treatment as a result of the defendant’s actions. It considered the |8fact that the crimes were a part of an ongoing dispute with members of feuding families in the Oak Grove community.
Furthermore, the defendant obtained a substantial benefit by pleading guilty to three counts of manslaughter and one count of aggravated arson, since he was initially charged with three counts of first degree murder in connection with the crimes.
Clearly, the trial court based its sentence on the seriousness of the offense and the benefit the defendant obtained from pleading guilty. As stated above, the trial court had great discretion to impose the maximum sentence. The heinous, senseless nature of the crimes that led to the loss of three lives and the physical and emotional scarring on numerous lives cannot be taken lightly. Since the defendant’s *503 egregious actions warrant the maximum sentences imposed, his sentences do not shock the sense of justice.
This assignment therefore has no merit.
CONCLUSION
For the reasons discussed below, we affirm the defendant’s convictions and sentences.
AFFIRMED.