DREW, J.
|, Charles Ray Davis was convicted by a jury of three counts of molestation of a juvenile, La. R.S. 14:81.2(A). He was adjudicated on count three as a second-felony habitual offender and sentenced as follows:
• 10 years at hard labor on Count One, five years of which being ordered served without benefit of probation, parole, or suspension of sentence;
• 25 years at hard labor on Count Two, all to be served without benefit of probation, parole, or suspension of sentence; and
• 58 years at hard labor on Count Three, as adjudicated, all to be served without benefits.
The three sentences were ordered to be served concurrently. The defendant was ordered to register as a sex offender and to pay court costs or, in default, to serve an additional one year in jail.
We analyze defendant’s seven assignments of error in five categories, as variously preserved through timely motions:[1]
(1)Insufficient evidence;
(2) Denial of defendant’s request to introduce evidence of M.G.’s allegedly false allegation of sexual abuse by another man;
(3) Prejudicial effect of the Gingerbread videos;
(4) Requiring further jury deliberations after the jury reported reaching verdicts on only two of the three counts; and
(5) Sentencing issues.
We affirm all three convictions.
The record reflects that the defendant is indigent. Accordingly, we strike the default jail time should he fail to pay court costs.
|2We affirm the sentences on Counts Two and Three. We amend the sentence on Count One, and as amended, affirm.

FACTS

Davis was charged with violating La. R.S. 14:81.2(A) and (C) on Count One, and with violating La. R.S. 14:81.2(A) and (E)(1) on Counts Two and Three. All relevant criminality occurred in the early Fall of 2010.[2]
The state filed a successful notice of intent to use videotaped testimony of the victims at Gingerbread House Children’s Advocacy Center.
The state successfully excluded testimony from Tremaine Lee Haas, who would have testified that he was falsely accused of inappropriate sexual conduct by M.G.[3] *837 The state argued that the testimony was substantially more prejudicial than probative, that M.G. never recanted this allegation, and that there was never any police involvement which could have produced evidence showing her statement to be false.[4]
Haas testified in a closed hearing that M.G. had written his name on her bedroom wall, accusing him of inappropriate conduct. The trial court cogently stated its reasoning in granting the state’s motion.[5]
| ¿TRIAL TESTIMONY
Bobbie Jean Burns[6] testified about a conversation with M.G. on the child’s 13th birthday. M.G. told her that the defendant, whom she called “Dolía”;[7] had sex with her and also with M.T.-l. The child told her that she wrote about these events and other sexual contact on her bedroom wall. Burns also testified that when she took M.G. to the hospital the next day, the child cried that “it was the truth and no one would believe her.”
Sarah Bynum Jose, a forensic interviewer at Gingerbread House Children’s Advocacy Center, testified about the Gingerbread House’s videotape process, methodology, and chain of custody. Each victim was videoed; all three videos were played at trial.
M.G. testified in conjunction with and through her video, that:
• she referred to Davis as “Uncle Dolía” and he lived at her house;
• he had three incidents of inappropriate sexual contact with her;
• the first time happened in September 2010, on which date Davis was drunk when he entered her room;
• he rubbed her stomach and legs, asked her for five minutes, removed his clothing, got on top of her, and put his penis inside of her vagina;
• she jumped up and Davis left her room;
• the second time was the following week when she and Davis were alone at her home because her mother had gone to the country;
14* Davis entered her room and began feeling under her clothes, but stopped when he heard M.G.’s brother enter the home;
• the third time was October 7, 2010, when M.T.-l was staying over;
• both girls were in M.G.’s bed when Davis entered her room, sat on her bed, and began feeling on her stomach and legs under the covers;
• Davis also touched M.T.-1 between her legs;
*838 • she wrote on her bedroom wall about these incidents;[8]
• she did not tell her family members or teachers about what Davis did;
• Davis never told her not to tell anyone; and
• he never gave her anything after the three incidents.
M.T.-l testified in conjunction with and through her video, that:
• her nickname was “My-My” and she referred to Davis as “Dolía”;
• he was her mother’s boyfriend, and he sometimes stayed at her house;
• she sometimes slept over at M.G.’s, as they went to the same school;
• she was born on December 22,1998;
• Davis touched her breasts at M.G.’s home on October 7, 2010;
• he also touched other bodily areas through her clothes;
• Davis never touched her in her own home;
• she did not tell her family about this;[9] and
• Davis never threatened her and never gave her anything.
M.T.-2 testified in conjunction with and through her video, that:
Is* she was born on April 9,1996;
• she called the defendant “Doha”;
• Davis was her mother’s boyfriend;
• he sometimes stayed over at her home;
• he had touched her breasts on top of her clothing;
• she saw Davis touch M.T.-l and grab her chest;
• she told her older siblings about Davis touching her, and
• Davis never threatened her and never gave her anything.
Three officers of the Shreveport Police Department[10] testified briefly as to their actions in these investigations.
Jennifer Olson Rodriguez, M.D., a pediatrician employed at the Cara Center,[11] physically examined M.G. Dr. Rodriguez testified that:
• M.G.’s hymen and anus were normal, with no bleeding;
• such results were not unusual, in that not all abuse causes injury and that an injury may heal over time, and tissue can heal or stretch; and
• it was possible that the child’s hymen had healed from recent abuse.
The defendant took the stand and testified that:
• he never molested these alleged victims;
• he shared a child with Tracey Turner (mother of M.T.-l and M.T.-2);
• he had prior criminal convictions;
• he sometimes stayed over at his girlfriend’s home;
• he was never in charge of M.G., and was alone with her only if everyone else had left or if he had to take her to school; and
|n* he never gave M.G. money to “hush up.”
*839 During deliberations, the jury returned to the courtroom, and the trial court had a discussion with the foreperson about the jury’s progress.[12] Based |7on this brief discussion, it was reasonable for the trial court to send the jury back for more deliberation. The jury later returned a verdict of guilty[13] on all three counts of molestation of a juvenile.

DISCUSSION

I. Sufficiency
The defendant argues that all required elements of the charged crimes were not proven beyond a reasonable doubt. In support, he further asserts:
• that there was no evidence of any physical injury or trauma to M.G. (the one victim who alleged penetration);
• the lack of any immediate reports of the three alleged victims despite living in homes surrounded by trusted family members as well as daily contact with trusted school officials;
• the lack of any evidence that the defendant threatened the alleged victims or their family members; and
• the lack of any evidence that the defendant offered, promised, or gave anything of value to the alleged victims in return for the silence.
Our law relative to appellate review of sufficiency is well settled.[14]
*840 [sin 2010, the relevant portions of the molestation statute were clear.[15]
A conviction for molestation of a juvenile requires proof that:
(1) the accused was over the age of 17;
(2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of 17;
(3) the accused was more than two years older than the victim;
(4) the accused had the specific intent to arouse or gratify either the child’s sexual desires or his own sexual desires; and,
(5)the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.[16]
Specific criminal intent is the state of mind that exists when the offender actively desired the prescribed criminal consequences to follow his | aact or failure to act *841 and may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1).
The term “lewd” is defined as lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. “Lascivious” is the excitement of lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals relative to sexual relations.[17]
It is not disputed that the defendant was over the age of 17, that all three victims were under the age of 17 at the time of the sexual offense, and that the defendant was more than two years older than each victim.[18]
There was evidence that the defendant had touched the breasts of M.T.-l and M.T.-2, and that he engaged in sexual intercourse with M.G.
A rational trier of fact could have found that the defendant’s behavior justified a finding of a lewd and lascivious act on each count.
With regard to the last element, specifically the use of influence by virtue of a position of control or supervision over the juvenile, M.G. testified that the defendant was her uncle who lived with her, and she was alone with him during one of the incidents of sexual contact.
Both M.T.-l and M.T.-2 testified that the defendant was their mother’s boyfriend, that he was the father of their youngest sibling, and that he also lived with them. In illustrating the various relationships that 11 ninvolved supervision and control, this court has noted that our jurisprudence reflects numerous cases involving molestation accomplished by virtue of control and/or supervision by non-custodial parents, babysitters, relatives, friends, and neighbors.[19]
Defendant argues that there was no evidence presented of any physical injury or trauma to M.G. A conviction for the crime of molestation of a juvenile does not require such a showing.
The defendant points out the lack of any immediate reports by the alleged victims despite living with trusted family members and having daily contact with school officials. The jury rejected this argument. Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have found sufficient evidence to render the three guilty verdicts.
II. Granting the State’s Motion in Li-mine
The state successfully sought to exclude the testimony of Tremaine Lee Haas. The defendant complains that this ruling denied his constitutional right to a fair trial, to which the state responds that no prejudicial error was shown, and there was nothing in the excluded testimony that deprived the defendant of his right to a fair trial. The right of an accused sex offender to present a defense must be balanced against the victim’s interests in *842 accordance with La. C.E. art. 412.[20] The decision to [ ^exclude the Haas testimony is clearly supportable.
The criteria to be used by the trial court in considering a motion for new trial is set out in La. C. Cr. P. Art. 851.[21]
112The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Cox, 2010-2072 (La.11/19/10), 48 So.3d 275.
The trial court held a closed hearing to determine whether reasonable jurors could find that the victim had made prior false accusations. Based on the defendant’s argument, it does not appear that the exceptions applied to the facts at hand. In *843 addition, there is no evidence that the trial court committed manifest error in denying the defendant’s motion for new trial because none of the exceptions outlined in La.C.Cr.P. art. 851 apply to the instant facts. This record supports the trial court’s rulings.
III. Gingerbread House Videos
The defendant argues that there was never an inquiry into any of the three minor victims’ alleged competency in that the victims were never asked the difference between right and wrong in court or during the Gingerbread House interviews.
The state responds that the defense did not object to the introduction of the videos or photographs. Without a contemporaneous objection, the defendant is barred from raising this claim on appeal, pursuant to La. C. Cr. P. art. 841. In addition, the state argues that the introduction of the videotaped testimony complied with the statutory requirements of La. R.S. 15:440 and each of the three victims did, in fact, testify in open court and were subject to cross-examination by the defense.
| iaThe statutory provisions regarding the admissibility of videotaped recordings are found in La. R.S. 15:440 et seq.[22]
*844 |14AII statutory requirements for the admissibility of videotaped testimony were followed and all three victims were available for cross-examination in the presence of the jury. The defense did not object to the admissibility of the videotaped testimony. In any event, the tapes were clearly admissible.
IV. Ordering Additional Deliberations
The defendant argues that since the jury foreperson reported a verdict on only two of the three charges, the judge should not have ordered further deliberations. Though the defendant technically objected to continued deliberation, no contemporaneous motion for a mistrial was made. Our law on mistrials is clear.[23]
This transcript does not support any claim of a deadlocked jury. The trial court’s colloquy with the foreperson was reasonable and brief. The jury only required a total of three and one-half hours to reach all three verdicts. The trial court was reasonable in allowing further deliberation.
V. Sentencing
The defendant attacks his sentences on Counts One and Three[24] because (1) he was 43 years old; (2) none of his prior crimes are considered as “sex” crimes; (3) there is no clarity as to what the impact on the juvenile victims would be; and (4) with the exception of one sex act, all touching |1fiwas done on top of clothing. Sentencing parameters for these crimes are clear.[25] Our law on appellate review of sentences is well settled.[26]
*845 The court considered La. C. Cr. P. art. 894.1, noting the impact of the crimes against three young females; the tender ages of the victims, as compared with the defendant; and the prior convictions of the defendant.
At the time the defendant molested the victim referenced in Count One, that child was over 13 years of age. This exposed him to a sentence of five to 20 years at hard labor, a fine of up to $10,000, or both.
As error patent, we note that part of defendant’s sentence on Count One was ordered to be served without benefits. When this crime was committed, La. R.S. 14:81.2(0 did not provide for any denial of benefits. Accordingly, we remove that prohibition.
|1fiAt the time the defendant molested the other two victims, those children were not yet 13 years old. The sentencing parameters for Counts Two and Three were from 25 to 99 years at hard labor, with at least 25 years to be served without benefits. In addition, the defendant was adjudicated as a second felony offender on Count Three, further increasing his maximum exposure to 198 years at hard labor without benefits on that count alone.[27] We detect no manifest error in these low to mid-range sentences.
DECREE
We affirm all convictions and the sentences on Counts Two and Three. We amend the sentence on Count One by deleting any prohibition against benefits. Due to defendant’s indigency, we also amend the sentence to strike the additional year in jail should defendant default on paying court costs. As amended, we affirm that sentence.
AFFIRMED IN PART, AMENDED IN PART, AND, AS AMENDED, AFFIRMED.

. The defendant timely filed a Motion in Li-mine, Motion for Post-Verdict Judgment of Acquittal, Motion to Reconsider Sentence, and Motion for New Trial.

. Count One pertains to the victim M.T.-2 (DOB 4/9/96).
Count Two pertains to the victim M.T.-l (DOB 12/22/98).
Count Three pertains to the victim M.G. (DOB 10/10/97).
As per La. R.S. 46:1844, the three children are referenced herein by initials.

.Haas is related to M.G. as an uncle by affinity.

. Stephanie Mosley, a victim assistance coordinator, testified relative to the defendant’s Motion in Limine that M.G. told her that she had been molested by "Yella” and that she had shared this information with her family, but that no one believed her and the police were never contacted.

. "The Court has endeavored to read the cases supplied by both the defense and the State on this issue and out of an abundance of caution this Court allowed an evidentiary hearing regarding this issue and has heard testimony of the witness called by the mover defendant and as well the witness called by the State. Based on the evidence and the Court's ruling — excuse me — reading of the cases supplied to the Court, the Court grants the motion in limine and finds that the question is whether reasonable jurors would find based on evidence presented by defendant that the victim had made prior false accusations. Based on what has been adduced, the Court does not find that there has been evidence of prior false allegations of molestation and thusly the Court grants the motion.”

. Burns is M.G.'s grandmother. The two have a very close relationship.

. Davis testified in his testimony that "Dolía” is his nickname.

. State Exhibit Nos. 4 to 12 included the following statements: "October 6 2010 Doha drunk, touched me and did something he had no business”; "Doha is wrong for what he did”; "Doha touched My-My in the wrong way”; and "Dolía touched me in the wrong spot 2010."

. M.T.-l's recorded testimony and testimony at trial revealed that she lived with her mother, grandparents, two uncles, two older brothers, two older sisters (including M.T.-2), and two younger sisters.

. Officers Gary Thomas, Hannah Clark, and Deandre Bell.

. The Cara Center is a regional facility for evaluation of sexual abuse claims.

.The Court: Madam foreperson, has the jury reached a verdict?
Juror McDonald: Not on all three.
The Court: But you have—
Juror McDonald: —on two.
The Court: On two. Have the jurors been able to talk and communicate with each other?
Juror McDonald: Yes ma’am.
The Court: Do you think it would be, you individually as a group, do you think it would be helpful and beneficial for you to go back in and continue your deliberations?
Juror McDonald: Yes ma’am, I think that we can resolve it. It’s just—
The Court: You need a bit more time?
Juror McDonald: Yes ma’am.
The Court: With that I'm going to send you back in to deliberate further. Will counsel approach the bench before I send you out. (Discussion at Bench.)
The Court: Thank you counsel, all counsel. Ladies and gentleman of the jury, I’m going to send you back in to tiy to deliberate further. Thank you.
(Jury excused.)
The Court: For the record the jury is out of the courtroom, and I had discussed with counsel prior to asking the jury to come back in and ask questions. I indicated to counsel the few questions that I would ask and have done so, and based on their responses and particularly by the foreperson I sent them back in to try to deliberate further. I tried to keep my questions as generic as I could. And at this time is there any response to what the Court has done by the State or defense?
Mr. Rodgers: None by the State.
Mr. Crawford: Well, actually your Honor, if I may briefly, I just want to note for the record that it’s been under three hours, and I believe that that may have been the decision to have them continue to deliberate. It has not been a significant amount of time although they have had a chance to speak, and the State agrees with the decision.
The Court: So noted by the State. And the defense, Mr. Goins, I know you have something to say.
Mr. Goins: Yes, your Honor. I would make an objection out of an abundance of caution. The foreperson did not report that the jury was hopelessly deadlocked and said they have reached a verdict on two of the counts, and they did say they would like to try on the third count.
The Court: Are you objecting for the record?
Mr. Goins: Yes.

. The verdict on count one was 11-1; the verdicts on the other two counts were unanimous.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most *840 favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (1988). The trier of fact senses first hand the testimony and unless the fact finder's assessment of believability is without any rational basis it should not be disturbed by a reviewing court. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (1992).
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.

. La. R.S. 14:81.2 provided in pertinent part:
(A) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
(C) Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet attained the age of seventeen, and when the offender has control or supervision over the juvenile, shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than twenty years, or both the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.
(E)(1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

. See State v. Leblanc, 506 So.2d 1197 (La.1987).

. See State v. Holstead, 354 So.2d 493 (La.1977); State v. Interiano, 2003-1760 (La.2/13/04), 868 So.2d 9.

. Davis was born April 22, 1967, making him 43 years old at the time of the crimes, on which dates M.T.-2 (DOB 4/9/96) was over 13; M.T.-l (DOB 12/22/98) was under 13; and M.G. (DOB 10/10/97) was under 13. The ages of the children on the dates of the crimes is not in dispute in this appeal.

. See State v. Ellis, 38,740 (La.App.2d Cir.8/18/04), 880 So.2d 214, particularly Footnote 2 (collecting cases).

. La. C.E. art. 412 Victim’s past sexual behavior in sexual assault cases
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim’s past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
F. For purposes of this Article, the term “past sexual behavior” is defined as sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged.
In a prosecution for sexually assaultive behavior, art. 412 prevents the introduction of evidence of the victim’s past sexual behavior, with certain limited exceptions. If the defendant wishes to offer evidence pursuant to one of the exceptions, he must file a notice of intent to do so. La. C.E. art. 412 C. The court must then hold a closed hearing to determine whether the offered evidence is admissible. La. C.E. art. 412(E). State v. Frith, 32,796 (La.App.2d Cir.12/8/99), 747 So.2d 1269, writ denied, 2000-0419 (La.1/26/01), 781 So.2d 1256.
When a defendant seeks to introduce evidence that the victim has made such prior false accusations, the trial judge must evaluate that evidence by determining whether reasonable jurors could find, based on the evidence presented by defendant, that the victim had made prior false accusations and whether all other requirements of the Code of Evidence have been satisfied. State v. Smith, 98-2045 (La.9/8/99), 743 So.2d 199.

. La. C. Cr. P. Art. 851. Grounds for new trial
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilt;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

. La. R.S. 15:440.1 Purpose.
It is declared to be in the best interest of the state that protected persons be spared from crimes of violence, and that persons who commit such crimes be prosecuted with a minimum of additional intrusion into the lives of such protected persons.
La. R.S. 15:440.2. Authorization.
The videotape authorized by this Subpart is hereby admissible in evidence as an exception to the hearsay rule.
La. R.S. 15:440.3. Videotape; admissibility; exception to hearsay rule.
The videotape authorized by this Subpart is hereby admissible in evidence as an exception to the hearsay rule.
La. R.S. 15:440.4. Method of record videotape; competency.
(A) A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That such electronic recording was voluntarily made by the protected person.
(2) That no relative of the protected person was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the protected person said.
(5) That the taking of the protected person’s statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a medical psychologist, a licensed professional counselor, or an authorized representative of the Department of Children and Family Services.
(B) The department shall develop and promulgate regulations on or before September 12, 1984, regarding training requirements and certification for department personnel designated in Paragraph (A)(5) of this Section who supervise the taking of the protected person's statement.
La. R.S. 15:440.5. Admissibility of videotaped statements; discovery by defendant.
(A) The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on Him or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to *844 view the recording before it is offered into evidence; and
(8) The protected person is available to testify.

. La. C. Cr. P. art. 775 provides, in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(2) The jury is unable to agree upon a verdict!.]

. The trial court assessed the minimum sentence on Count Two.

. See fn. 15, supra.

. A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App.2d Cir.11/3/10), 55 So.3d 56, writ denied, 2010-2853 (La.11/18/11), 75 So.3d 454. The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra.
Second, a sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir.11/3/10), 55 So.3d 90.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence will not be set aside as excessive. Id. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.

. In sentencing after habitual offender adjudications, the trial court may deny parole only if the underlying crime denies parole. See State v. Bobo, 46,225 (La.App.2d Cir.6/8/11), 77 So.3d 1, writ denied, 2011-1524 (La.12/16/11), 76 So.3d 1202.