Judgment rendered March 13, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,466-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KEITH BROWN, II                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 375,709

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Annette Fuller Roach

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

ALEX L. PORUBSKY
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before STEPHENS, THOMPSON, and ROBINSON, JJ.

STEPHENS, J., concurring in part and dissenting in part with written
reasons.

**ROBINSON, J.**

Keith Brown, who was convicted by a unanimous jury of attempted indecent behavior with juveniles and sentenced to 20 months at hard labor along with a $1,500 fine, appeals his conviction and sentence. We affirm both.

## FACTS

In July of 2014, Shreveport Police Department ("SPD") Corporal Sabrina Dallas responded to a welfare concern call from a counselor regarding a statement made to the counselor by a juvenile, "JW." JW told Dallas that her mother's boyfriend, Keith Brown, had gotten into bed with her one morning and wrapped his arms around her. According to JW, Brown said that he was not going to hurt her and asked if she could keep a secret. He left when she told him to get out of the bed. JW also told Dallas that a couple of weeks before the incident, she noticed Brown was on the floor in her bedroom when she woke up.

Dallas concluded her investigation and passed the information that she had gathered to Sergeant De'Andre Belle, a detective with the SPD's sex crimes unit. Belle made numerous attempts to reach JW's mother but was unsuccessful, so he suspended the investigation. Belle reopened the investigation in 2019 when he began investigating two sex crimes involving other juveniles.

In January of 2020, Belle interviewed Brown concerning JW's allegation, an alleged rape of an underage girl, and an allegation that Brown had consensual sexual intercourse with an underage girl.

On May 27, 2020, concerning the incident with JW, Brown was charged by bill of information with one count of indecent behavior with

juveniles in violation of La. R.S. 14:81. JW's birthdate was listed as being on February 22, 1999. The crime was alleged to have occurred on July 17, 2014.

On December 10, 2020, the state filed notice of La. C.E. art. 412.2 evidence of Brown's other sexually assaultive behavior and his lustful disposition toward children. The evidence consisted of: (1) Brown's other acts concerning JW, namely JW finding Brown on the floor near her bed, JW finding Brown underneath her sister's bed, and Brown telling JW that he found her sexually attractive; (2) Brown's confession to having sex with an alleged 13-year-old ("AO"); and (3) his alleged rape of a 15-year-old ("SW").

A free and voluntary hearing was held on February 6, 2023, the day that the trial commenced. The court found that Brown's statements to Belle were freely and voluntarily made, and would be admissible at trial. The court then moved on to the La. C.E. art. 412.2 issue. Brown's attorney lodged an objection and argued that hiding under a bed is not a crime and does not show lustful disposition. Defense counsel also argued that Brown had the right to confront AO and SW about their allegations. The court deferred ruling on the issue until defense counsel had an opportunity to further research the issue.

The court returned to the issue the following day. Brown's attorney argued that even if statements concerning AO and SW survived the La. C.E. art. 403 balancing test, they are still hearsay statements which should not be admitted. Defense counsel further argued that the confrontation clause applied, and Brown should able to question AO and SW about their statements.

Subject to Brown's objection, the state and defense counsel agreed that only portions of the interview dealing with JW and AO would be played. Belle would not be questioned about SW.

Corporal Dallas testified at trial about what happened in July of 2014 when she responded to the welfare concern call from JW's counselor. JW related to Dallas about how her mother's boyfriend had gotten into bed with her one morning and wrapped his arms around her. She told him to get out of the bed. He told her that he would not hurt her and asked her if she could keep a secret. He left when she told him to get out of the bed. JW did not mention to Dallas any particular part of her body that he touched.

JW also told Dallas that a couple of weeks before that happened, she noticed Brown was on the floor in her bedroom when she awakened. JW's mother informed Dallas that she had been dating Brown for five months, and that he had been living with them for two months. Dallas contacted Belle, which concluded her investigation.

JW testified that her date of birth is February 22, 1999. Brown, who was a deacon at her church, dated her mother, and he lived with them for approximately two years. JW was assigned a counselor after she missed a great deal of school because of a 2014 rape unattributable to Brown and because she was responsible for helping her younger siblings. JW complained about Brown to her counselor.

In 2014, JW lived in a four-bedroom apartment in Shreveport with her mother, four sisters, and a brother. Brown entered her room and got in her bed while wearing only boxers, and began "spooning" her. She recalled that Brown pulled her close to him and was groping her. She felt his penis on her buttocks. He got up and left after she told him to get out. She told her

mother about it immediately when her mother returned home from work. She never saw her mother approach Brown after she told her what had happened.

JW testified about other unusual behavior by Brown around that time frame. On one occasion, she woke up and saw him looking out of her bedroom window as if he was checking to see if her mother was outside. On another occasion, her sister woke her up and told her that Brown was under JW's bed. She saw him under her bed, and then he got up and ran out from JW's room while wearing boxers. One time, her mother asked him to wake her up for school, so he smacked her on her buttocks and then ran out of the room. When she was 15, she awoke from sleeping on the couch to find Brown sniffing her buttocks; he ran when discovered. All of these incidents occurred in Caddo Parish, but the additional incidents were not reported to the police.

JW testified that she told her mother each time that Brown did something to her. Brown continued to stay in their apartment, and her mother's response was to lock her door and sleep with her little sister, but those measures did not work. JW eventually moved to Texas to stay with her uncle for a few months before returning to Shreveport at the end of 2016. The only incident that occurred after she returned from Texas was when Brown took her mother's keys, entered the apartment while JW was sleeping with a friend, and slowly removed her covers.

JW moved to Fort Lauderdale, Florida at the end of 2017 to live with her grandmother. When she moved back to Shreveport, Brown was still around even though he was not living with her mother. JW married in 2018 after graduating high school. Because her husband is in the Navy, they

4

move a lot. She has lived in California, Florida, and Texas since 2018. She was living in Bossier City at the time of trial.

JW did not know what happened to her case after speaking with Corporal Dallas. She characterized it as her mother closed the case. Before Sergeant Belle called her in California in 2019, her mother called and told her that her case had been reopened and not to tell Belle about anything that happened with Brown. Her mother would not give her Belle's phone number. JW told Belle everything when she finally spoke to him.

Belle's interview of Brown was conducted on January 15, 2020. A recording of the interview was played for the jury during Belle's testimony. Brown stated his date of birth is September 25, 1986. Brown admitted to wrapping his arms around JW while she was in bed, but he denied telling her that he wanted her or asking her if she could keep a secret. He stated that he hugged her in the morning when he woke her up, but he denied that anything inappropriate happened. According to Brown, this was the first time a juvenile has accused him of something inappropriate.

Brown was asked later in the interview about being at a hotel on Pines Road in Shreveport. Brown said he was there with a lady named Jessica, who was in her upper 20s. He stated that he ran into another young lady while there with Jessica, but could not remember her name. The lady said she was stranded, so he got a hotel room for her. He claimed he did not see her again after getting the room for her. Then he said the lady was walking on a nearby road and she said she was stranded, so he got her a room. He stated that he spent a little time with her in the room, then left to go with Jessica. He admitted to having vaginal sex with the lady, but said it was consensual. He described the lady as being 19 or 20 years old, short,

5

Hispanic, and having a "young look" about her. She told him that she had children, and assured him that she was overage. He returned the next morning to give her money for food, and possibly had sex again that morning. He thought they may have had sex twice.

Sergeant Belle, the supervisor of SPD's sex crimes unit, has been with the unit for 14 years. He was a detective with the unit in 2014. Belle explained that a patrol officer responding to a call concerning a sex crime would gather general information, and then contact one of his detectives who is on call.

Belle testified that he became involved in the original case in 2014. He told the responding officer to write a report and send it to him. He did not speak with JW, who was 15 at the time, as he explained that the parent is the primary contact in situations involving minors. JW's mother would not contact him at first despite his efforts to reach her by calling her at least a dozen times and leaving his business card at her residence. Finally, JW's mother told him that JW was in Florida and would be back in a month, but then he never heard from her. He eventually suspended the case because he could not get into contact with JW, which he explained was typical for these situations.

Belle testified there were allegations concerning a separate underage victim, AO, in 2019. Brown admitted to having sex with AO in the hotel room and said she was of age; however, AO was 14.

Belle explained that AO fled from officers when they tried to stop her. After AO disclosed to officers what had happened to her, she was taken to a hospital and the Louisiana Department of Children and Family Services ("DCFS") was contacted. AO told them she was from Houston. DCFS then

6

contacted its counterpart agency in Houston, and learned that AO was a runaway and how old she was. It was later determined during a Gingerbread House interview that AO was a victim of human trafficking because a male and a female had brought her to Shreveport from Houston. Belle testified that the last he heard in 2021 was that AO was in DCFS custody. He did not know where AO was at the time of trial.

According to Belle, nothing happened in JW's case between 2014 and 2019 because he had no contact with her. Belle testified that he reopened JW's case in 2019 after he arrested Brown concerning another juvenile victim. He interviewed JW in March of 2020 after contacting her through social media. She told him that when she was 15, Brown would come into her room while she was wearing her underwear and a t-shirt, and would cuddle with her and do inappropriate stuff. Asked to describe "inappropriate stuff," Belle stated that JW said he would touch her buttocks sometimes and tell her that he was sexually attracted to her. Any touching was above her clothes.

On February 7, 2023, Brown was found guilty of the responsive verdict of attempted indecent behavior with juveniles. Eight days later, Brown filed a motion for a post-verdict judgment of acquittal. He argued that the evidence was insufficient to convict him as the state relied on the La. C.E. art. 412.2 evidence to convict him. He also argued that his statements should not have been presented to the court, as his statement about JW was not contrary to his own interest, and the statement about AO was hearsay evidence and it violated the confrontation clause. Finally, he contended that JW's testimony about a prior sexual assault was overly prejudicial and should not have been presented to the jury. The motion was denied.

7

On February 15, 2023, Brown also filed a motion for new trial. The allegations were largely the same as in the motion for post-verdict judgment of acquittal. That motion was also denied.

Sentencing was held on March 15, 2023. The trial court noted that Brown's attorney had filed a presentencing memorandum, and that the court had reviewed a lot of character letters written on behalf of Brown. The court considered the factors found in La. C. Cr. P. art. 894.1(A). The court noted that Brown had been accused of committing similar offenses, which presented an undue risk that he would commit another crime during the period of a suspended sentence or probation. The court also found that time in prison may provide Brown with correctional treatment and reflection on his life. The court further found that a lesser sentence would deprecate the seriousness of Brown's crime.

As for aggravating factors, the court determined that Brown knew JW was 15 years old and particularly vulnerable. He also used his status as the mother's boyfriend to gain access to JW's bedroom to commit this crime. Finally, the court considered that there was testimony at trial concerning allegations of similar offenses by Brown. As for mitigating circumstances, the only one noted by the court was Brown's lack of prior felony convictions.

Brown was sentenced to 20 months at hard labor and ordered to pay a $1500 fine plus court costs. On March 23, 2023, Brown filed a motion to reconsider sentence. He argued that a probated sentence was warranted because he had no other convictions. The motion to reconsider sentence was denied.

Brown has appealed his conviction and sentence. He argues: (1) the evidence was insufficient to convict him; (2) the trial court erred when it allowed the state to introduce evidence of other bad acts alleged to have been committed against AO without giving him the opportunity to cross-examine AO and without conducting the balancing test required by La. C.E. art. 403; and (3) his sentence is constitutionally excessive.

## DISCUSSION

### *Sufficiency of the evidence*

La. R.S. 14:81(A)(1) defines the crime of indecent behavior with juveniles as:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

In *State v. Jones*, 10-0762, n. 1 (La. 9/7/11), 74 So. 3d 197, the supreme court noted that it had earlier defined "lewd and lascivious" in the context of La. R.S. 14:81(A) as an act which is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner."

La. R.S. 14:27(A) defines criminal attempt as:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Alexander*, 51,918 (La. App. 2 Cir. 4/11/18), 247 So. 3d 981, *writ denied*, 18-0805 (La. 2/11/19), 263 So. 3d 436. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be

10

inferred according to reason and common experience. *State v. Lilly*, *supra*; *State v. Alexander*, *supra*. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Lilly*, *supra*; *State v. Green*, *supra*.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753.

Brown does not contest that there is an age difference of more than two years between him and JW, or that JW was under the age of 17 in 2014. Instead, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed a lewd or lascivious act upon or in the presence of JW, or that the act was done with the intent to arouse or gratify the sexual desire of either Brown or JW.

Brown notes that Belle did not testify what the inappropriate touching was that allegedly occurred on or about July 17, 2014. In addition, JW herself never described the inappropriate touching. Brown points out that at most, JW mentioned how he lay behind her and hugged her, during which time his penis touched her buttocks. They were both clothed at the time, and there is no testimony that he thrust himself against her or positioned himself a certain way.

11

In support of his argument, Brown cites *State v. Louviere*, 602 So. 2d 1042 (La. App. 4 Cir. 1992), *writ denied*, 610 So. 2d 796 (La. 1993), where the appellate court reversed Louviere's conviction of attempted indecent behavior with juveniles. Louviere, an elderly man, attempted to "French kiss" his 9-year-old neighbor and her like-aged friend. The court concluded that in the absence of genital contact or any other obscene or indecent act or repeated occurrence, the kisses fell short of being the attempted performance of a lewd or lascivious act.

Furthermore, the court found there was no evidence for a rational trier of fact to conclude that Louviere specifically intended to arouse or gratify his own sexual desire or that of his victims. The court noted that the setting as well as the circumstantial evidence supported a hypothesis of innocence. The encounter occurred in daylight and in plain view, and he asked the girls if his breath smelled like chicken following the kisses. That the first victim asked "what about [her friend]" immediately after she was kissed, and that Louviere responded by kissing the friend as well, supported the inference that the kisses were intended to be a crude and repugnant joke. Finally, he did not touch the girls with his hands during the kisses, and he had passed up the opportunity earlier in the day to accost the girls in the privacy of his garage.

Brown contends that JW never testified at trial about inappropriate comments made to her, and she also failed to describe the groping or inappropriate actions. Brown also notes that JW failed to follow up on her allegations against Brown once she became an adult, especially after her mother told her in 2019 that a detective had reached out to her about the case.

12

Brown also cites *State v. Rideaux*, 2005-446 (La. App. 3 Cir. 11/2/05), 916 So. 2d 488, in support of his argument that some genital contact was required. The *Rideaux* court found that the evidence was insufficient to support Rideaux's conviction of molestation of CR because the state failed to prove beyond a reasonable doubt that Rideaux committed the offense through the use of supervision or control of the victim as set forth in the indictment. The court then determined that the evidence was insufficient to convict him of the responsive verdict of indecent behavior with a juvenile because the evidence did not show that his actions were lewd and lascivious, nor did it prove that he had the intent to arouse or gratify his or CR's sexual desires.

CR testified that Rideaux, his wife, and son were spending the night at her family's home. After CR had fallen asleep on a couch, she awakened to Rideaux massaging her feet. When he asked her if she wanted any other place to be rubbed, she told him no and returned to sleep. She again woke up when Rideaux unsnapped her bra. During a police interview, she reported that Rideaux had rubbed her back and the side of her back, and indicated the part of her body below her armpit. He also touched the top of her bottom under her underwear. She stated that he had not touched her breasts. However, she testified at trial that she could not remember if he touched her breasts and that he rubbed her bottom. She stated she got up and went into her bedroom. Rideaux never said anything to her about not telling anyone.

The *Rideaux* court concluded:

In the present case, unlike Defendant warning [CR's sister] not to tell anyone, Defendant did not say a word to CR as she left the room. Unlike *Bugbee* [*State v. Bugbee*, 34,524 (La. App. 2

13

Cir. 2/28/01, 781 So. 2d 748], there were no repeated acts, thus, no indication of a plan. There was no kissing, touching of the genitals as in *Breaux* [*State v. Breaux*, 02-382 (La. App. 5 Cir. 10/16/02), 830 So. 2d 1003], or attempts to prevent others from knowing about the incident. Other adults were present in the home, and there was nothing to suggest a sexual agenda. While Defendant's actions may have been inappropriate, especially unhooking CR's bra, we find that the State failed to prove his actions were "lewd or lascivious" or done with "the intention of arousing or gratifying the sexual desires of either person" beyond a reasonable doubt.

*Id*. at pp. 15-16, 916 So. 2d at 498.

Brown contends that lying behind someone and hugging them, while both are fully clothed, does not rise to the level of genital contact even when the offender's penis touches against the other person. He adds that there was no manipulation or positioning of his penis to suggest a sexual connotation.

We disagree with Brown. The evidence presented at trial established that Brown had the specific intent to commit a lewd and lascivious act. Brown, who was wearing boxers, got into the bed of his girlfriend's underage daughter, who was not completely dressed. He then spooned her, which left her feeling his penis on her buttocks. Furthermore, the evidence was also sufficient to prove that Brown, when he got into bed with JW and hugged her, had the specific intent to arouse or gratify the sexual desires of Brown or JW. In reaching this conclusion, we also consider Brown's additional conduct at other times, including hiding under JW's bed, slapping her buttocks to wake her up, and placing his face near her buttocks while she slept.

Brown's argument that the evidence was insufficient to convict him of attempted indecent behavior with juveniles is without merit.

*Evidentiary ruling*

Brown next argues that the trial court erred in allowing evidence concerning an alleged bad act with AO. During the interview, Belle told Brown what AO had alleged and asked if it was true. Brown contends that Belle's comments about what AO may have told him would not be a statement against interest, but was inadmissible hearsay. Brown further contends that the trial court erred in allowing Belle to testify as to AO's age when he was not the person who determined her age and lacked documentation to support his testimony.

Brown additionally argues that the admission of evidence through Belle, when Brown did not have the opportunity to cross-examine AO, violated his right to confront his accusers. Brown maintains that although courts have permitted this type of evidence to be admitted under La. C.E. art. 412.2, it has occurred only when the purported victim of the other bad acts testified at trial or a prior proceeding where the accused had the opportunity to cross-examine his accuser.

Finally, Brown argues that the trial court erred in failing to conduct an La. C.E. art. 403 balancing test to determine if the probative effect of the evidence concerning AO outweighed its prejudicial effect. He contends it should have been done before the audio recording containing the allegations concerning AO was allowed into evidence and before Belle was questioned about the allegations supposedly made by AO.

La. C.E. art. 412.2, which governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases, states:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the

time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

La. C.E. art. 412.2 creates an exception to the rule set forth in La. C.E. art. 404(B)(1), which generally prohibits the introduction of evidence of "other crimes, wrongs or acts" for the purpose of proving a person's character or propensity to criminal activity. *State v. Layton*, 14-1910 (La. 3/17/15), 168 So. 3d 358.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

Questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Braden*, 55,275 (La. App. 2 Cir. 9/27/23), 372 So. 3d 900.

The confrontation clause of the Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" The Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the

16

defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177 (2004).

In addition, the confrontation clause of the Louisiana Constitution directly affords the accused the right to "confront and cross-examine the witness against him." La. Const. art. I, §16; *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000).

The main purpose of the confrontation clauses is to secure for the defendant the opportunity to cross-examine witnesses against him. Cross-examination is the primary means by which to test the believability and truthfulness of testimony, and it provides an opportunity to impeach or discredit witnesses. *State v. Mitchell*, 2016-0834 (La. App. 1 Cir. 9/21/17), 231 So. 3d 710, *writ denied*, 17-1890 (La. 8/31/18), 251 So. 3d 410.

Even if hearsay evidence is erroneously admitted at trial, confrontation errors are subject to a harmless error analysis. *State v. Dillard*, 45,633 (La. App. 2 Cir. 11/3/10), 55 So. 3d 56, *writ denied*, 10-2853 (La. 11/18/11), 75 So. 3d 454.

An error is harmless when the guilty verdict was surely unattributable to the error. *State v. Robertson*, 06-1537 (La. 1/16/08), 988 So. 2d 166. Factors to be considered include the importance of the evidence to the state's case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the state's case. *State v. Smith*, 54,510 (La. App. 2 Cir. 11/8/23), 374 So. 3d 1035; *State v. Dillard*, *supra*.

17

Brown additionally argues that the improper admission of the evidence was not harmless error because it was used to paint Brown in a bad light and to bolster JW's testimony. Brown urges that the improper admission denied him a fair trial.

It is unnecessary to determine whether or not a hearsay exception applied to the AO evidence, the confrontation clause was implicated and violated, or the evidence failed the La. C.E. art. 403 balancing test. Any error was harmless because the verdict was surely unattributable to the evidence. Brown admitted to Belle during his interview that he wrapped his arms around JW and hugged her when he woke her up, but denied that anything inappropriate happened. JW testified that Brown "spooned" her while wearing only boxers, he pulled her close to him and groped her, and she felt his penis against her buttocks. What occurred left enough of an impression on JW that she disclosed it to her counselor. Furthermore, there were other instances of unusual or inappropriate conduct by Brown toward JW, whether it was slapping her on her buttocks or sniffing her buttocks while sleeping.

### Excessive sentence

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing

sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full compliance with art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Sandifer*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Bell*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been

more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra.*

The trial court adequately complied with La. C. Cr. P. art 894.1 by considering relevant aggravating and mitigating factors. The court noted that it had read character letters sent on Brown's behalf that were attached to his presentencing memorandum.

Brown faced a fine of not more than $2500 and/or a sentence of up to 3.5 years with or without hard labor. His sentence of 20 months at hard labor falls on the lower end of his sentencing exposure. The sentence is not excessive, and the trial court did not abuse its discretion in imposing it.

## CONCLUSION

For the foregoing reasons, Brown's conviction and sentence are AFFIRMED.

**STEPHENS, J., concurring in part and dissenting in part with written reasons.**

I agree with my esteemed colleagues that the evidence may have been sufficient to support Brown's conviction for attempted indecent behavior with juveniles. I vehemently disagree, however, with their conclusion that the trial court's admission of the La. C.E. art. 412.2 evidence was harmless error.

La. C.E. art. 412.2 creates an exception to the rule set forth in La. C.E. art. 404(B)(1) and governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases. When an accused is charged with acts that constitute a sex offense involving, *inter alia*, a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong or act involving sexually assaultive behavior or which indicates a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant if its probative value substantially outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 412.2(A) and (B); *State v. Johnson*, 50,005, pp. 13-14 (La. App. 2 Cir. 8/12/15), 175 So. 3d 442, 453, *writ denied*, 15-1687 (La. 9/16/16), 206 So. 3d 203.

When seeking to introduce other crimes evidence under La. C.E. art. 404(B), the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. *State v. Joekel*, 19-0135, p. 1 (La. 1/8/20), 286 So. 3d 423, 424; *State v. Taylor*, 16-1124, p. 10 (La. 12/1/16), 217 So. 3d 283, 291; *State v. McCoy*, 55,354, p. 16 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1102, 1111. I find that

the State fell woefully short in meeting its burden, and the trial court erred in letting the State present to the jury, via the in-court testimony of Detective Belle and portions of the audio recording of Det. Belle's interview of Brown, the inadmissible hearsay statements of A.O. as evidence that Brown had a lustful disposition towards children.

A hearsay statement is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. 801(C); *State v. Hearold*, 603 So. 2d 731, 737 (La. 1992). La. C.E. art. 801(D) provides for statements that are not hearsay, none of which pertain to this case. Furthermore, none of the exceptions to the hearsay rule are applicable. More disturbing, however, is the fact that A.O.'s statement was introduced through the testimony of Det. Belle, with her never having been under oath or available for cross-examination.

The Sixth Amendment to the U.S. Constitution and Art. I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him. The Confrontation Clause bars the admission of an out-of-court "testimonial" statement against a criminal defendant unless the declarant is unavailable and the defendant had a proper opportunity to cross-examine that declarant. *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). A.O.'s statement was clearly testimonial as it was given during the SPD's investigation into Brown to establish or prove past actions or events potentially relevant to later criminal prosecution. *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273-74.

2

If an appellate court determines that the trial court abused its discretion in admitting evidence under La. C.E. art. 412.2, the error is subject to a harmless error analysis on appeal. *State v. Dale*, 50,195, p. 12 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, 537, *writ denied*, 15-2291 (La. 4/4/16), 190 So. 3d 1203; *State v. Parker*, 42,311 (La. App. 2 Cir. 8/15/07) 963 So. 2d 497, *writ denied*, 07-2053 (La. 3/7/08), 977 So. 2d 896. However, when evidence is introduced at trial in violation of a defendant's confrontation rights, the analysis is that set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 705 (1967). As recognized by the Louisiana Supreme Court regarding harmless error in this context:

> Under *Chapman*, *supra*, a reviewing court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24, 87 S. Ct. at 828. In applying the *Chapman* standard, "[t]he question, however, is not whether the legally admitted evidence was sufficient…, which we assume it was, but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *See Satterwhite v. Texas*, 486 U.S. 249, 258-59, 108 S. Ct. 1792, 1798, 100 L. Ed. 2d 284 (1988).

*State v. Eaglin*, 18-822, pp. 1-2 (La. 3/18/19), 265 So. 3d 761, 761-62.

The State was allowed to bolster the victim's testimony given at trial with the allegations supposedly made by A.O. to Det. Belle, along with the detective's testimony that A.O. was 14 years old. The State offered no proof whatsoever to support the secondhand information given by Det. Belle regarding A.O.'s age, a crucial factor in determining whether this evidence showed a lustful disposition for underaged girls. The State also used the testimony of Brown's encounters with A.O. to show a pattern of behavior and an absence of mistake, to rebut Brown's reasonable hypothesis of

3

innocence that he wrapped his arms around J.W. to wake her up for school in the morning.

Even if the evidence involving A.O. had relevance, the State should not have been allowed to present it through inadmissible hearsay statements. Det. Belle had no firsthand knowledge of the encounters between Brown and A.O. Instead, Det. Belle repeated what he had been told by A.O., who was not present to be cross-examined as to the truthfulness of her statements. The only evidence offered on the critical issue of A.O.'s age was through Det. Belle, who could only testify to what he was told by an unidentified source. In fact, neither A.O. nor the DCFS worker who allegedly confirmed A.O.'s identity and age was present to confirm A.O.'s age in 2019 or what A.O. told Brown about her age. There is also the troubling fact that A.O. was an unwilling witness at the time she gave her statement to Det. Belle. A.O. had run when she saw police, and was chased before being apprehended. Facing imprisonment herself, she instead incriminated Brown.

Clearly, there is a reasonable possibility that this evidence might have contributed to Brown's conviction. *Chapman*, *supra*. It cannot be said that the introduction of this evidence, which Brown was unable to question or put into perspective given that A.O. was not present at trial or otherwise able to be cross-examined, was harmless beyond a reasonable doubt.[1]

When a reviewing court determines that there has been trial error which is not harmless in cases in which the entirety of the evidence, both admissible and inadmissible, was sufficient to support the conviction, the accused must receive a new trial, but is not entitled to an acquittal, even if

_____

[1] This is about as harmless as putting tomatoes in gumbo or sweet potatoes in chili.

4

the admissible evidence, considered alone, may be insufficient. *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988); *State v. Hearold*, 603 So. 2d at 734. I would reverse Brown's conviction and remand the case to the district court for a new trial.